UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| Luis Eduardo PEREZ PARRA, Leonel Jose RIVAS GONZALEZ, Abrahan Josue BARRIOS MORALES, and M.R.R.Y., <br><br>   *Petitioners,* <br><br> v. <br><br> DORA CASTRO, Warden, Otero County Processing Center; MARY DE ANDA-YBARRA, Field Office Director, El Paso Field Office, United States Immigration and Customs Enforcement; PATRICK J. LECHLEITNER, Senior Official Performing the Duties of the Director, United States Immigration and Customs Enforcement; ALEJANDRO MAYORKAS, Secretary of Homeland Security; MERRICK B. GARLAND, United States Attorney General, *in their official capacities*, <br><br>   *Respondents.* | Civil Action No.: 24-cv-912 <br><br> **PETITION FOR WRIT OF HABEAS CORPUS** |

**VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

INTRODUCTION

1. For months, the United States Government has claimed that Venezuelans who have been ordered deported will be removed in the reasonably foreseeable future. Yet, thousands of Venezuelans are currently detained[1] and none have been removed to Venezuela in nearly nine months. As diplomatic relations between Venezuela and the United States continue to

---

[1] *Immigration and Customs Enforcement Detention*, Transactional Recs. Access Clearinghouse, https://trac.syr.edu/phptools/immigration/newdetention/ (last visited Sept. 12, 2024).

1

   deteriorate, particularly as the United States has reinstated economic sanctions against Venezuela and disputes the results of the recent Venezuelan presidential election, it becomes even less likely that Venezuela will receive deportation flights from the United States.

2. Petitioners Luis Eduardo Perez Parra, Leonel Jose Rivas Gonzalez, Abrahan Josue Barrios Morales, and M.R.R.Y.[2] are all Venezuelans awaiting deportation and have been detained by U.S. Immigration and Customs Enforcement (ICE) for nine months to almost one year, with no end in sight.

3. Petitioners challenge their indefinite detention as a violation of the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment.

4. Petitioners respectfully request that this Court grant them a Writ of Habeas Corpus, ordering Respondents to release them from custody under reasonable conditions of supervision. Petitioners are seeking habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging civil immigration detention. *See Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001)).

**CUSTODY**

5. Petitioners are in the physical custody of Respondents. Petitioners are detained at Otero County Processing Center (OCPC) in Chaparral, New Mexico. Petitioners are under the direct control of Respondents and their agents.

**JURISDICTION**

6. Jurisdiction is proper under 28 U.S.C. §§ 1331, 224, and the Suspension Clause, U.S. Const. art. I, § 2.

**VENUE**

7. Venue is proper in this District under 28 U.S.C. §§ 1391, 2241 because at least one Respondent

---

[2] Petitioner M.R.R.Y.'s motion to proceed under pseudonym is forthcoming.

is in this District, all Petitioners are detained in this District, Petitioners' immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District.

## PARTIES

8. Petitioner Luis Eduardo Perez Parra is currently detained by Respondents at OCPC. He has been in ICE custody since October 2, 2023. His removal order became administratively final on March 16, 2024.

9. Petitioner Leonel Jose Rivas Gonzalez is currently detained by Respondents at OCPC. He has been in ICE custody since December 5, 2023. His removal order became administratively final on April 14, 2024.

10. Petitioner Abrahan Josue Barrios Morales is currently detained by Respondents at OCPC. He has been in ICE custody since October 20, 2023. His order of removal became administratively final on February 20, 2024.

11. Petitioner M.R.R.Y. is currently detained by Respondents at OCPC. She has been in ICE custody since October 16, 2023. Her removal order became administratively final on March 6, 2024.

12. Respondent Dora Castro is the Warden of OCPC, where Petitioners are currently detained. She is a legal custodian of Petitioners and is named in her official capacity.

13. Respondent Mary De Anda-Ybarra is the Field Office Director responsible for the El Paso Field Office of ICE with administrative jurisdiction over Petitioners' cases. She is a legal custodian of Petitioners and is named in her official capacity.

14. Respondent Patrick J. Lechleitner is the Deputy Director and Senior Official Performing the Duties of the Director of ICE. He is a legal custodian of Petitioners and is named in his official capacity.

15. Respondent Alejandro Mayorkas is the Secretary of the United States Department of Homeland Security (DHS). He is a legal custodian of Petitioners and is named in his official capacity.

16. Respondent Merrick B. Garland is the Attorney General of the United States Department of Justice. He is a legal custodian of Petitioners and is named in his official capacity.

## STATEMENT OF FACTS

### I. PETITIONERS

17. Petitioners were ordered removed by immigration judges and did not appeal their removal orders.

18. Petitioners Perez Parra, Barrios Morales, and M.R.R.Y. have removal orders that have been administratively final for more than 180 days. Petitioner Rivas Gonzalez has a removal order that has been administratively final for more than 150 days.

19. Petitioners have been in civil immigration detention for between nine months and nearly one year.

20. Petitioners were ordered removed to Venezuela, and no other countries were designated for their removal.

21. Petitioners have all surrendered their "cédulas de identidad," or government-issued Venezuelan identification documents to U.S. government officials, and have fully cooperated with ICE's efforts to remove them.

22. ICE officials asked Petitioners Perez Parra and M.R.R.Y. if they would voluntarily agree to be removed to Mexico. They both declined because they did not have ties to or family in Mexico and because they feared for their safety in Mexico, having heard that migrants are vulnerable to drug cartel violence there. Petitioner Perez Parra knew two people who were detained at

OCPC and who were removed to Mexico, though they were not Mexican, and were kidnapped there. Petitioner M.R.R.Y. has acquaintances who were not Mexican and who were harmed in Mexico.

**Petitioner Perez Parra**

23. Petitioner Perez Parra has been in ICE custody for approximately eleven and a half months since October 2, 2023.

24. Petitioner Perez Parra had a Credible Fear Interview[3] on November 22, 2023. He passed the interview and was placed into removal proceedings.

25. He was ordered removed on February 15, 2024, and his removal order became administratively final on March 16, 2024.

26. Petitioner Perez Parra has a friend who lives and works in Matthews, North Carolina. If released, he would live there with his friend.

**Petitioner Rivas Gonzalez**

27. Petitioner Rivas Gonzalez has been in ICE custody for approximately nine months since December 5, 2023.

28. He was ordered removed on March 15, 2024, and his removal order became administratively final on April 14, 2024.

29. Petitioner Rivas Gonzalez had a Credible Fear Interview on December 19, 2023 and passed. He was placed in removal proceedings before an immigration judge on December 7, 2023.

30. Petitioner Rivas Gonzalez has a two-year-old daughter and a domestic partner who are seeking asylum in the U.S.

---

[3] U.S. Asylum officers conduct Credible Fear Interviews (CFI) when an individual is subject to expedited removal and informs the U.S. Customs and Border Protection (CBP) or ICE that they intend to apply for asylum; they fear persecution or torture; or they fear returning to their country. Passing a CFI means that an asylum officer has found that the individual has a credible fear of persecution or torture.

31. If released, Petitioner Rivas Gonzalez will live with his daughter and domestic partner in Chicago, Illinois.

**Petitioner Barrios Morales**

32. Petitioner Barrios Morales has been in ICE custody for approximately eleven and a half months since October 20, 2023.

33. An immigration judge granted him voluntary departure on January 18, 2024 while he was in ICE custody, and required him to depart from the U.S. on or before February 20, 2024 under safeguards. At the same time, the immigration judge issued an alternative order of removal. *See* 8 C.F.R. § 1240.26(d).

34. ICE did not give Petitioner Barrios Morales any additional information or instructions on how to depart under safeguards and continued to detain him. Petitioner Barrios Morales did not depart the U.S. by the February 20, 2024 deadline.

35. The immigration judge's alternate order of removal took effect and became administratively final on February 20, 2024 because Petitioner Barrios Morales had not departed the United States. 8 C.F.R. § 1241.1(f).

36. Petitioner Barrios Morales suffers from anxiety and depression, takes prescribed medication to treat it, and sees a mental health professional about every two to three months.

37. If released, Petitioner Barrios Morales would live with his mother, stepfather, and two younger brothers in El Paso, Texas.

**Petitioner M.R.R.Y.**

38. Petitioner M.R.R.Y. has been in ICE custody since October 16, 2023.

39. Petitioner M.R.R.Y. passed a Credible Fear Interview on December 7, 2023, and was placed in removal proceedings before an immigration judge.

40. The immigration judge ordered Petitioner M.R.R.Y. removed on February 5, 2024, and her

removal order became administratively final on March 6, 2024.

41. If released, Petitioner M.R.R.Y. would live with her sister and domestic partner in San Antonio, Texas.

   **II. REMOVALS TO VENEZUELA**

42. According to the most current data available from March 2024, approximately 4,379 Venezuelans were in ICE custody, more than any other nationality besides Mexico.[4]

43. After several years of no deportation flights to Venezuela,[5] the United States announced in early October 2023 that it had brokered a deal with the Venezuelan government to receive deported Venezuelans in exchange for lifting some economic sanctions.[6]

44. Between October 2023 and December 2023, the United States deported, primarily via charter flights, approximately 1,300 Venezuelans back to Venezuela, a tiny fraction of the thousands of Venezuelans who have arrived in the United States in recent years and who have been ordered deported.[7]

45. The last removal flight to Venezuela conducted by DHS occurred in late December 2023. Venezuela has accepted no deportation flights from the United States since that time.[8]

46. In late January, 2024, the Venezuelan government announced that it would cease receiving deportation flights from the U.S. as of February 13, 2024, in response to the economic

---

[4] *Immigration and Customs Enforcement Detention*, *supra* note 1.
[5] Annie Correa, Genevieve Glatsky and Hamed Aleaziz, Deportation Flights From the U.S. to Venezuela in Limbo, N.Y. TIMES (Feb. 7, 2024), https://www.nytimes.com/2024/02/07/world/americas/migrant-crisis-deport-venezuela-flights.html.
[6] Valerie Gonzalez & Regina Garcia Cano, *US resumes deportation flights to Venezuela with more than 100 migrants on board*, ASSOCIATED PRESS (Oct. 18, 2023), https://apnews.com/article/venezuela-migrants-deportation-texas-biden-immigration-1115aa224f1fa79fb88bd991a8ed705a.
[7] Correa *et al.*, *supra* note 4.
[8] Deisy Buitrago and Vivian Sequera, *Venezuela is prepared for US sanctions on oil, may reject migrant flights - officials*, REUTERS (Jan. 30, 2024), https://www.reuters.com/world/americas/venezuela-prepared-reimposition-us-sanctions-its-oil-2024-01-30/.

sanctions that the United States re-imposed on Venezuela after previously lifting them in 2023.[9]

47. The United States has declined to recognize Nicolás Maduro as the President of Venezuela following Venezuela's July 28, 2024 election, further deteriorating bilateral relations between the two countries and significantly decreasing any likelihood of deportation flights resuming in the reasonably foreseeable future.[10]

48. For months, deteriorating bilateral relations between the U.S. and Venezuela have been and remain an impediment to negotiating deportations to Venezuela, especially as the U.S. has recently hinted at possible "punitive action" following Venezuela's 2024 presidential election.[11]

49. Even if a new U.S. presidential administration seeks to reopen negotiations over deportations to Venezuela, its interest and ability to do so is uncertain, the outcome is speculative, and any such negotiations would commence months from now and take an undetermined amount of time.[12]

## LEGAL FRAMEWORK

50. "Freedom from imprisonment—from government custody, detention, or other forms of

---

[9] *Id.*

[10] Press statement, Anthony J. Blinken, Secretary of State, Assessing the Results of Venezuela's Presidential Election - United States Department of State (Aug. 1, 2024), https://www.state.gov/assessing-the-results-of-venezuelas-presidential-election/.

[11] "The statement from Blinken on Thursday stopped short of threatening new sanctions on Venezuela but he hinted at possible 'punitive action.' Reuters reported on Tuesday that Washington was considering fresh sanctions following the disputed election." Kanishka Singh and Matt Spetalnick, *US recognizes Maduro's opponent as winner in Venezuela election*, REUTERS (Aug. 1, 2024), https://www.reuters.com/world/americas/us-recognizes-maduros-opponent-winner-venezuela-election-2024-08-02/.

[12] "U.S. officials have expressed concerns that post-election upheaval could spur more Venezuelans to leave and head for the U.S.-Mexico border, according to the Washington-based source. With immigration already a hot-button issue, that could create new problems for U.S. Vice President Kamala Harris in her campaign for president." Marianna Parraga, Matt Spetalnick and Lisandra Paraguassu, *West hits pause on fresh measures against Venezuela's Maduro*, REUTERS (Aug. 13, 2024), https://www.reuters.com/world/americas/not-fast-or-furious-nations-take- measured-reaction-venezuela-election-2024-08-13/.

physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

51. The Due Process Clause requires that the deprivation of Petitioners' liberty be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"). As the Supreme Court held in *Zadvydas*, indefinite detention, and detention without adequate procedural protections, would raise a "serious constitutional problem" and run afoul of the Due Process Clause. 533 U.S. at 690.

52. Section 1231 of Title 8 of the U.S. Code governs the detention and removal of noncitizens, like Petitioners, who have been ordered removed. Section 1231(a)(2) authorizes a 90-day period of mandatory post-final-removal-order detention, during which ICE is supposed to effectuate removal. This 90-day period is known as the "removal period" and starts with the latest of one of the triggering conditions listed in Section 1231(a)(1)(B)(i)-(iii): (i) the entry of a final removal order; (ii) the final order from a circuit court reviewing the removal order, if the court ordered a stay of removal pending review, or (iii) "[i]f the [noncitizen] is confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

53. Those individuals who are not removed within the 90-day removal period are no longer subject to mandatory detention, and should generally be released under conditions of supervision, such as periodic reporting and other reasonable restrictions. *See* 8 U.S.C. § 1231(a)(3). The government may continue to detain certain noncitizens beyond the 90-day removal period if they have been ordered removed on inadmissibility grounds after violating nonimmigrant status or conditions of entry, or on grounds stemming from criminal convictions, or security concerns,

9

or if they have been determined to be a danger to the community or a flight risk. *See id*. § 1231(a)(6). If these groups of noncitizens are released, they are also subject to the supervision terms set forth in Section 1231(a)(3). *Id*.

54. In *Zadvydas*, the Supreme Court held that Section 1231(a)(6), when "read in light of the Constitution's demands, limits [a noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id*. at 699. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. At that point, the individual must be released because their continued detention would violate both Section 1231(a)(6) and the Due Process Clause of the Fifth Amendment. *Id*.

55. In determining a period reasonably necessary to effectuate removal, the *Zadvydas* Court adopted a "presumptively reasonable period of detention" of six months, inclusive of the 90-day removal period. *Id*. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.; *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (granting habeas relief to inadmissible Cuban petitioners whose detention lasted beyond six months post-removal order and whose removal to Cuba was not reasonably foreseeable); *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005) (same).

56. The government should release a noncitizen whom it has detained beyond the presumptive six-month period if it is unable to present documented confirmation that removal is likely to occur in the reasonably foreseeable future. *Clark*, 543 U.S. at 386.

57. Release is the proper remedy for unconstitutionally prolonged post-removal-order detention.

*See Zadvydas*, 533 U.S. at 699-700 (explaining that supervised release is the appropriate relief when "the detention in question exceeds a period reasonably necessary to secure removal" because at that point, detention is "no longer authorized by statute").

58. Petitioners' detention fits squarely within the *Zadvydas* framework. Their removal orders became (or, in Mr. Rivas Gonzalez's case, is about to become) administratively final more than six months ago, and they have not impeded their removal. Abundant, publicly-available evidence on the breakdown of diplomatic ties between the U.S. and Venezuela resulting in the complete cessation of deportation flights to Venezuela for over eight months and counting demonstrates that Petitioners' removal to Venezuela is not likely to occur at any time in the reasonably foreseeable future. The Government cannot meet its burden of demonstrating that their removal is significantly likely in the reasonably foreseeable future, given the length of their detention thus far with no indication that ICE is making any progress in arranging their removal. Thus, Petitioners' continued detention violates the implicit requirement in 8 U.S.C. § 1231(a)(6) that detention should not become unreasonably prolonged. In addition, their continued detention serves no legitimate government purpose and lacks sufficient procedural protections in violation of the Due Process Clause.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT –**
**8 U.S.C. § 1231**

59. Petitioners reallege and incorporate by reference each and every allegation contained above.

60. Section 1231(a) of Title 8 of the U.S. Code governs the detention of an individual with an administrative final order of removal. The INA permits DHS to detain an immigrant during the "removal period," which is defined as the 90-day period following the issuance of a final order of removal. 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B), (a)(2).

61. Petitioners are detained pursuant to the discretionary, post-removal-period detention provision, Section 1231(a)(6), because more than ninety days have elapsed since their removal orders became administratively final. *See* 8 C.F.R. § 1241.1.

62. Petitioners have not engaged in any conduct to trigger an extension of the removal period under Section 1231(a)(1)(C).

63. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court construed Section 1231(a)(6) to contain an implicit temporal limitation of six months, after which continued detention is no longer presumptively reasonable. *Id.* at 701. After that point, "if a detainee 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' . . . [and] the government fails to rebut the detainee's assertion, he must be released." *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313-14 (11th Cir. 2019) (quoting *Zadvydas*, 533 U.S. at 701); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004).

64. Petitioners Perez Parra, Barrios Morales, and M.R.R.Y. have all been detained for over six months since their removal orders became administratively final. Thus, their detention under Section 1231 is no longer presumed reasonable. The same reasoning will apply to Petitioner Rivas Gonzalez about one month from now, when he reaches six months of post-final order detention on October 14, 2024. Regardless of the specific length of time each Petitioner has been detained, none of them are likely to be removed in the reasonably foreseeable future, and thus they are entitled to relief under *Zadvydas*.

65. There is no significant likelihood that the Government will be able to remove Petitioners to Venezuela in the reasonably foreseeable future.

66. Nor is there any other "sufficiently strong special justification" for Petitioners' prolonged detention beyond the six-month limit. *See Zadvydas*, 533 U.S. at 690-91.

67. Thus, Petitioners' detention violates Section 1231, and they are entitled to immediate release

from custody.

## COUNT TWO
### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

68. Petitioners reallege and incorporate by reference each and every allegation contained in paragraphs 1-58 above.

69. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

70. Civil immigration detention violates due process if it is not reasonably related to its statutory purpose. *See id*. at 690 (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risk of flight and prevent danger to the community. *Id.*; *Demore v. Kim*, 538 U.S. 510, 514–15, 528 (2003).

71. Prolonged civil detention also violates due process unless it is accompanied by strong procedural protections to guard against the erroneous deprivation of liberty. *Zadvydas*, 533 U.S. at 690-91; *Foucha*, 504 U.S. at 81-83; *Kansas v. Hendricks*, 521 U.S. at 346, 364-69 (1997); *United States v. Salerno*, 481 U.S. 739, 750-52 (1987).

72. Petitioners' prolonged civil detention has extended well beyond the end of the removal period, and will continue into the indefinite future. Their detention is no longer reasonably related to the primary statutory purpose of ensuring imminent removal.

73. The *pro forma* internal post-order custody reviews ICE conducted in Petitioners' cases do not

meet the minimum procedural safeguards required by due process. *See Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011).

74. Thus, Petitioners' detention violates both substantive and procedural due process.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Order Respondents to show cause why the writ should not be granted within three days (unless for good cause additional time, not exceeding twenty days, is allowed), and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

3. In the event that this Court determines that a genuine dispute of material fact exists regarding the likelihood of removal to Venezuela in the reasonably foreseeable future, Petitioners request that the Court promptly schedule an evidentiary hearing pursuant to 28 U.S.C. § 2243. *See Milton v. Miller,* 744 F.3d 660, (10th Cir. 2014) (holding that an evidentiary hearing is required to resolve factual disputes in a habeas petition); *Beckett v. Hudspeth*, 131 F.2d 195 (10th Cir. 1942); *see also Singh*, 945 F.3d at 1315 ("It is well-established that a court may not decide a habeas corpus petition based on affidavits alone when there are factually contested issues.").

4. Declare that Petitioners' indefinite detention violates the Immigration and Nationality Act;

5. Declare that Petitioners' indefinite detention violates the Due Process Clause of the Fifth Amendment;

6. Enjoin Respondents from further unlawfully detaining Petitioners;

7. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioners from custody;

8. In the alternative, grant a writ of habeas corpus ordering Respondents to immediately release Petitioners from custody under reasonable conditions of supervision;

9. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

10. Grant such further relief as this Court deems just and proper.

Dated: September 13, 2024

Respectfully submitted,

*/s/ Rebecca Sheff*
Rebecca Sheff
Max Brooks
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(781) 718-0990
rsheff@aclu-nm.org
mbrooks@aclu-nm.org

Zoe Bowman
Las Americas Immigrant Adv. Center
1500 Yandell Dr.
El Paso, TX 79902
(915) 433-9702
zoebowman@las-americas.org

Mikaila Hernández*
Samah Sisay*
Center for Constitutional Rights
666 Broadway St. 7th Floor
New York, NY 10012
(212) 614-6436
mhernandez@ccrjustice.org
ssisay@ccrjustice.org

Jessica Myers Vosburgh*
Center for Constitutional Rights
P.O. Box 486
Birmingham, AL 35201
(212) 614-6492
jvosburgh@ccrjustice.org

\**Pro hac vice* petition forthcoming

**COUNSEL FOR PETITIONERS**

Case 1:24-cv-00912-KG-KRS   Document 1   Filed 09/13/24   Page 16 of 17

**Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioners because I am one of the Petitioners' attorneys. I have discussed with the Petitioners the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

/s/ Zoe Bowman                                                                                     Date: September 13, 2024